115 So.2d 554 (1959)
GENERAL TELEPHONE COMPANY OF FLORIDA, a corporation, Petitioner,
v.
Jerry W. CARTER, as Chairman, and Wilbur C. King and Alan S. Boyd, as members of and constituting the Florida Railroad and Public Utilities Commission, Respondents.
GENERAL TELEPHONE COMPANY OF FLORIDA, a corporation, Petitioner,
v.
Jerry W. CARTER, as Chairman, and Wilbur C. King and Alan S. Boyd, as members of and constituting the Florida Railroad and Public Utilities Commission, Respondents.
Supreme Court of Florida.
November 13, 1959.
*555 Howard P. Macfarlane, Tampa, John Robert Jones, Columbus, Ohio, and Hugh C. Macfarlane, Tampa, for petitioner.
Lewis Petteway, Tallahassee, Gen. Counsel for Florida Railroad & Public Utilities Commission.
John J. Duffy, Tampa, for Avery W. Gilkerson.
HOBSON, Justice.
The petitioner is a corporation organized under the laws of the State of Florida for the purpose of conducting a general telephone business within this state. It is engaged in furnishing local and long distance telephone service to the public over its own lines throughout the territory it serves. The petitioner also provides long distance telephone service outside its own territory through its connections with other companies within Florida and the other states of the United States.
*556 On August 18, 1958, the petitioner filed a petition with the Florida Railroad and Public Utilities Commission (hereinafter referred to as the Commission) requesting authority to increase its intrastate rates and charges by an amount which would raise its rate of return to not less than 7.25% per annum on its net investment of its property devoted to intrastate telephone service.
Upon completion of hearings on the petition, the Commission, via Order 2741, made substantially the following findings:
(1) That a rate base of $88,658,381 represents the reasonable value of the petitioner's utility property, upon which it is entitled to earn a fair and reasonable return.
(2) That a return of 6.68% on the above rate base will constitute a fair and reasonable return on the petitioner's property.
(3) That in order to obtain a return of 6.68% the utility will require "additional gross revenue in the sum of $1,620,495".[1]
(4) Thus, the petitioner is entitled to increase its exchange intrastate telephone rates and charges so as to produce annual additional gross revenue of $1,620,495. When the above increase is put into effect, it will give the petitioner a fair, reasonable and compensatory rate of return.
(5) Such increase is authorized as of April 6, 1959.
Under protest, the petitioner filed a schedule of rates in conformity with Order 2741. The Commission elected to treat the letter of protest as a "request or petition for reconsideration". The result of this reconsideration was the issuance of Commission Order 2741-A.
Order 2741-A, after setting out the history of the instant rate proceeding, pointed out that the Commission's original Order 2741 had authorized a return of 6.68% on the utility's system rate base of $88,659,381 and permitted the utility to increase its intrastate exchange rates and charges so as to produce additional gross revenue in the sum of $1,620,495, which will give the utility a net operating income of "at least $4,451,665", or a return of "slightly more than 6.55%" on its intrastate exchange rate base of $68,004,934. At this point the Commission specifically found that such a return of 6.55% was not confiscatory but rather was fair, just, reasonable and compensatory. The Commission then approved the schedule of rates estimated to produce additional gross revenue of $1,620,495.[2]
Thereafter, petitioner filed with this Court two petitions for writs of certiorari seeking a review of both Order 2741 and Order 2741-A. In view of the fact that both of these petitions involved substantially identical problems, they were consolidated.
Before turning to the petitioner's contentions, we deem it proper to remind ourselves that orders of the Commission come before this Court clothed with the statutory presumption that they have been made within the Commission's jurisdiction and powers, and that they are reasonable and just and such as ought to have been made.[3] On review this presumption of *557 validity can only be overcome either where the Commission's error plainly appears on the face of the order or where such weakness is made to appear by clear and satisfactory evidence.[4]
It is also important that we take cognizance of the fact that review of the Commission's orders are by certiorari.[5] From the cases it is clear that the scope of review on certiorari is limited in nature. On certiorari this Court will not undertake to re-weigh or re-evaluate the evidence presented to the administrative body whose order is under examination. Our duty is to examine the record to determine whether the Commission's order is in accord with the essential requirements of law and whether the agency had before it competent substantial evidence to support its findings and conclusions.[6]
Where the order of the Commission involves the legislative rate-making processes the fundamental purpose of our inquiry is to insure that the established rules of law have not been violated to the prejudice of a party and to ascertain whether the rates fixed by the Commission conform to the statutory requirement that they be just and reasonable.[7]
The petitioner contends that the Commission erred when it based the percentage increase granted on the "system" rate base. Petitioner asserts that such a method of calculation is tantamount to a consideration of its interstate property, operating expenses and revenues in determining the reasonableness of intrastate telephone rates. The petitioner maintains such a consideration violates the organic law governing the Commission's activities.
The record discloses that the Commission after considering the evidence determined that the petitioner was entitled to a rate of return on a rate base of $88,658,381.
The above figure was calculated as follows:

 Rate Base
 Exchange (Local) $68,004,934
 State Toll 13,013,095
 Interstate 7,640,352
 ___________
 Total (i.e. System) $88,658,381

It was to the system figure of $88,658,381 that the Commission applied the 6.68% rate of return.
The reasons behind the use of the above procedure appear in Order 2741, wherein the Commission said:
"In our consideration of this case we have come to the conclusion that we must consider the overall operations of the company. If we consider only the exchange operations to the exclusion of the state and interstate toll then the utility's return will be below the level we have found to be required. If we consider the exchange and the state toll together then the company's overall return would be in excess of that found to be reasonable. In all fairness to the subscribers and the company we feel that we must base the increase on the system results. In arriving at this opinion we have taken into consideration the fact, too, that there is no method provided whereby the interstate earnings of a telephone company, such as the applicant, can be increased or decreased through regulatory action. Interstate telephone rates are controlled by the Federal Communications Commission through whatever regulation it imposes on the Bell System which in turn dominates interstate telephone service. *558 An independent telephone company can be losing money on its interstate service but there is little if anything it can do about securing authority to increase interstate rates for such service. About its only recourse would be to secure, if possible, an improved toll settlement agreement with the Bell System. By the same token an independent can be earning an excessive return on its interstate business but reducing interstate rates is another matter. Where such a situation exists, which is tantamount to an absence of Federal regulation of the interstate portion of the utility's business, we feel that it is proper to consider the system operations of the utility in determining proper rates for local service."
The instant use of the system method of calculating the intrastate rate of return violates the organic law governing rate-making proceedings by state authorities.
As the Supreme Court of the United States said in the Minnesota Rate Case:[8]
"(3) Where the business of the carrier is both interstate and intrastate, the question whether a scheme of maximum rates fixed by the state for intrastate transportation affords a fair return must be determined by considering separately the value of the property employed in the intrastate business and the compensation allowed in that business under the rates prescribed. This was also ruled in the Smyth case [Smyth v. Ames, 169 U.S. 466, at page 541, 18 S.Ct. 418, 42 L.Ed. 819]. The reason, as there stated, is that the state cannot justify unreasonably low rates for domestic transportation, considered alone, upon the ground that the carrier is earning large profits on its interstate business, and, on the other hand, the carrier cannot justify unreasonably high rates on domestic business because only in that way is it able to meet losses on its interstate business."
In Smith v. Illinois Bell Tel. Co., 1930, 282 U.S. 133, 51 S.Ct. 65, 68, 75 L.Ed. 255, that Court also said:
"The separation of the intrastate and interstate property, revenues and expenses of the company is important not simply as a theoretical allocation to two branches of the business. It is essential to the appropriate recognition of the competent governmental authority in each field of regulation. In disregarding the distinction between the interstate and intrastate business of the company, the court found it necessary to pass upon the fairness of the division of interstate tolls between the American and Illinois companies. The court held that the division was reasonable and the appellants contest this ruling. But the interstate tolls are the rates applicable to interstate commerce, and neither these interstate rates nor the division of the revenue arising from interstate rates was a matter for the determination either of the Illinois Commission or of the court in dealing with the order of that Commission. The Commission would have had no authority to impose intrastate rates, if as such they would be confiscatory, on the theory that the interstate revenue of the company was too small and could be increased to make good the loss. * * * In view of the questions presented in this case, the validity of the order of the state commission can be suitably tested only by an appropriate determination of the value of the property employed in the intrastate business and of the compensation receivable for the intrastate service under the rates prescribed. Minnesota Rate Cases (Simpson v. Shepard) 230 U.S. 352, 435, 33 S.Ct. *559 729, 57 L.Ed. 1511, [1556], 48 L.R.A., N.S., 1151, Ann.Cas. 1916A, 18. As to the value of that property and as to the revenue and expenses incident to that business, separately considered, there should be specific findings. Railroad Commission of Wisconsin v. Maxcy, 281 U.S. 82, 83, 50 S.Ct. 228, 74 L.Ed. 717, [718]."
The Florida Supreme Court recognized that separation of intrastate business from interstate business was essential in State ex rel. Railroad Commissioners v. Seaboard Air Line Ry., 1904, 48 Fla. 129, 37 So. 314. This holding has been reaffirmed by our later decisions.[9]
Separation is not a theoretical problem of methods but is a necessary recognition of the fact that the Commission's sphere of authority is basically intrastate in nature. Had the matter rested here this Court would have been forced to quash the Commission's orders.
Fortunately for those who support the validity of the instant proceedings the Commission rectified its error and on reconsideration made the requisite separation finding that a return of 6.55% on the intrastate rate base of $68,004,934 is a just and reasonable rate of return. The Commission went on to grant a rate increase of $1,620,495, which actually exceeds the rate of return found to be reasonable.[10]
Our examination of the record discloses that such a rate of return is not confiscatory but rather is sufficient to yield a just and reasonable rate of return upon the petitioner's investment of property devoted to intrastate use.
As to the petitioner's contentions that the Commission has erroneously applied an income tax accrual lag against the working capital requirements of the petitioner, thereby unreasonably reducing the rate base, and that the Commission has arbitrarily disallowed as an item of expense payments made by the petitioner to the General Telephone Corporation for services rendered pursuant to a service contract, we find the same to be without merit. Our disposition of these issues is controlled by this Court's position originally adopted in the case of Jacksonville Gas Corporation v. Florida Railroad & Public Utilities Commission,[11] wherein we pointed out that the Commission in rate cases is free to follow such methods as it may choose so long as the "end result" of such methods is the establishment of just and reasonable rates and so long as such methods do not go so far astray that they violate our statutes or run afoul of constitutional guarantees.
Thus, we hereby reaffirm our adoption of the "end result" test and apply the same to the ultimate results achieved by Orders 2741 and 2741-A, finding as we do that the adoption of the rates prescribed therein guarantees to the petitioner a just and reasonable rate of return on its investment.
Both petitions for writs of certiorari are hereby denied.
THOMAS, C.J., and TERRELL, ROBERTS and O'CONNELL, JJ., concur.
NOTES
[1] Increasing gross revenue by $1,620,495 will yield additional net income to the utility of $765,457 after taxes.
[2] In order to understand the effect of the Commission's orders and avoid the confusion often inherent in dealing with a multitude of numbers, the following computation may be helpful:

 Increase Granted
 Intrastate net operating income
 before these proceedings $3,772,327
 Net increase actually granted
 by Orders 2741 and
 2741-A 765,457
 _______
 Total $4,537,784

$4,537,784 is 6.67% of the intrastate rate base of $68,004,934 and only $4,946 less than 6.68% of said intrastate rate base. Said increase actually granted is also some $84,000 more than 6.55% of the intrastate rate base.
[3] Section 364.20, F.S.A.
[4] Florida Rate Conference v. Florida Railroad and Public Utilities Commission, Fla. 1959, 108 So.2d 601.
[5] Section 366.10, F.S.A.
[6] De Groot v. Sheffield, Fla. 1957, 95 So.2d 912. See also Florida Motor Lines Corp. v. Douglass, 1941, 150 Fla. 1, 7 So.2d 843.
[7] Section 364.14, F.S.A.
[8] Simpson v. Shepard, 1912, 230 U.S. 352, 33 S.Ct. 729, 755, 57 L.Ed. 1511.
[9] Florida Rate Conference v. Florida Railroad and Public Utilities Commission, Fla. 1959, 108 So.2d 601 and State ex rel. Railroad Commissioners v. Louisville & Nashville Railroad Company, 1912, 62 Fla. 315, 57 So. 175, 190.
[10] See Footnotes 1 and 2.
[11] Fla. 1951, 50 So.2d 887.