OVERTON, Justice.
MCI Telecommunications Corp. appeals an order in which the Florida Public Ser *540 vice Commission reduced the rates local telephone companies charge long distance telephone companies for billing and collection services in an effort to prevent local telephone companies from receiving a windfall in revenue caused by the change in procedure of gross receipts tax collection. We have jurisdiction. Art. V, § 3(b)(2), Pla. Const. We reverse the order of the Public Service Commission, finding it is arbitrary and not supported by substantial competent evidence.
Telephone companies providing long distance telephone service in Florida purchase “access” service from local telephone companies. An access services tariff sets the amount that local telephone companies may charge for this service. The long distance telephone companies pay a tax on their gross receipts from the sale of intrastate long distance telephone service, and, for the purposes of the gross receipts tax, the access service which they purchase from local telephone companies is deemed to be resold by the long distance companies to their customers. Prior to January 1, 1985, long distance companies received a credit against the gross receipts tax paid on revenues derived from the “resold” long distance access service. The amount of the credit equalled the gross receipts tax paid by local telephone companies on revenues derived from the access charges collected from the long distance telephone companies. The long distance telephone companies received this credit because local telephone companies’ access charges, established by the Public Service Commission, included a rate component covering the gross receipts tax on those revenues. Thus, the local telephone companies paid the gross receipts tax on access services, but passed that cost on to the long distance telephone companies through access charges.
Effective January 1, 1985, the Florida Legislature abolished the gross receipts tax of local telephone companies relating to access charge revenues and made the long distance companies responsible for the tax without an offsetting credit.* By shifting the tax liability to the long distance telephone companies, this statutory change did not affect the amount of the tax actually collected by the state. In reviewing the impact of the 1984 amendment on its rate-making, the Public Service Commission recognized that it should reduce the 1985 rates for access services by the amount of the gross receipts tax indirectly collected through those rates in 1984 to avoid a windfall to local telephone companies and a corresponding double tax to the long distance telephone companies. The Commission calculated that a total reduction of $6.15 million would be necessary to offset the windfall. The Commission applied this entire reduction amount to rates charged by local companies to long distance companies for billing and collection services provided under the access services tariff.
MCI claims that the Commission’s reduction in the billing and collection service charge was inequitable because only AT & T, as the predominant user of these billing services, would receive a substantial benefit by this reduction. The Commission reasoned that it was appropriate to make adjustments in this portion of the tariff because reduction in billing and collection charges may encourage AT & T not to establish its own billing and collection system and, consequently, increase costs for ratepayers and regulatory burdens for the Commission.
The Commission clearly had the authority to eliminate the windfall in revenues to local telephone companies. The question is, however, whether the Commission, in eliminating the windfall, acted arbitrarily or without substantial competent evidence. Citizens v. Florida Public Service Commission, 464 So.2d 1194 (Fla.1985); Polk County v. Florida Public Service Commission, 460 So.2d 370 (Fla.1984); *541 General Telephone Co. v. Carter, 115 So.2d 554 (Fla.1959).
We agree with MCI that it was arbitrary for the Commission to use a revenue-neutral change in the gross receipts tax law as a basis to lower the gross receipts tax on one long distance telephone company through a reduction in the cost of billing and collection, a service which the other long distance companies do not use. While the Commission has broad discretion in these matters, this record contains insufficient support for this method of eliminating the windfall. The following testimony of an AT & T vice president forms the sole basis in the record for the Commission’s findings:
Q. Does your company currently pay local exchange carriers for billing and collection?
A. Yes, sir, we do.
Q. Do you plan at some time in the future to do your own billing and collections?
A. We’re going to do some of it. We have definite plans to do more private line billing, and WATS and 800.
Q. Could you give us the time frame on when you plan to start your own billing and collecting?
A. We are going to — we have historically, always have done some private line billing, if you will. We are picking up more of the private line billing during ’85, and we are looking at WATS and 800 in the ’85-’86 time frame.
I think I can get you some specific information about that. I don’t have it with me. I’ll be happy to provide it. I think these plans, I’m sure, have been reviewed with United and all the companies as recently as last Friday in some cases.
In denying MCI’s petition for reconsideration, the Commission recognized that “the data presented in this proceeding was imperfect.” The witness was obviously unprepared to discuss plans of AT & T to do its own billing and no evidence establishes the impact, if any, AT & T’s separate billing would have on Florida’s ratepayers.
In attempting to adjust the existing 1984 access charge rates to compensate for the 1985 tax changes and eliminate the windfall to local companies, the Commission ignored its underlying reason for the adjustment when it reduced rates for one specific access service used predominantly by one long distance telephone company. We agree with MCI’s assertion that the Commission’s ruling compounded, rather than solved, the windfall revenue problem. While one company, AT & T, will substantially benefit from the Commission’s rate reduction, other long distance companies will be obligated to pay an increased amount because of the gross receipts tax change. We conclude that the Commission acted arbitrarily and without substantial competent evidence to support its order.
For the reasons expressed, we reverse the order of the Commission and remand for further proceedings.
It is so ordered.
MCDONALD, C.J., and EHRLICH and SHAW, JJ., concur.
ADKINS, BOYD and BARKETT, JJ., dissent.

 The change was accomplished by repeal of the credit provision contained in section 203.011, Florida Statutes (Supp.1984) (see § 3, ch. 84-342, Laws of Fla.), and the simultaneous amendment of the definition of gross receipts to exclude revenues from resold services from the local companies’ gross receipts (see § 4, ch. 84-342, Laws of Fla., codified as § 203.01(3)(c)).