908 So.2d 426 (2005)
Charles J. CRIST, Jr., etc., Appellant,
v.
Lila A. JABER, etc., et al., Appellees.
Harold McLean, etc., Appellant,
v.
Lila A. Jaber, etc., et al., Appellees.
AARP, Appellant,
v.
Lila A. Jaber, etc., et al., Appellees.
Nos. SC04-9, SC04-10, SC04-946.
Supreme Court of Florida.
July 7, 2005.
*428 Charles J. Crist, Jr., Attorney General, Christopher M. Kise, Solicitor General, Lynn C. Hearn, Deputy Solicitor General, Tallahassee, FL, on behalf of Charles J. Crist, Jr., Attorney General, State of Florida.
Harold McLean, Public Counsel, Charles J. Beck, Deputy Public Counsel and H.F. Mann, Associate Public Counsel, Tallahassee, FL, on behalf of the Citizens of the State of Florida.
Michael B. Twomey, Tallahassee, FL, on behalf of AARP, for Appellants.
Richard D. Melson and David E. Smith, Tallahassee, FL, on behalf of Florida Public Service Commission.
Susan F. Clark and Donna E. Blanton of Radey, Thomas, Yon and Clark, P.A., John P. Fons, Major B. Harding and Jennifer Heckman of Ausley and McMullen, Charles J. Rehwinkel and Susan S. Masterton, Tallahassee, FL and Elizabeth B. Sanchez, Tampa, FL, on behalf of Bellsouth Telecommunications, Inc., Bellsouth Long Distance Inc., Sprint-Florida, Inc., Sprint Communications Limited Partnership and Verizon Florida, Inc.
Floyd R. Self and E. Gary Early, Tracy W. Hatch, George N. Meros, Jr., of Gray Robinson, P.A., and Donna C. McNulty, Tallahassee, FL, on behalf of AT & T of the Southern States, LLC, Knology of Florida, Inc., and MCI Worldcom Communications, Inc., for Appellees.
PER CURIAM.
We have on appeal a decision of the Florida Public Service Commission (Commission), relating to rates of basic local telecommunications services. We have jurisdiction. See art. V, § 3(b)(2), Fla. Const. For the foregoing reasons, we conclude that the actions of the Commission are supported by competent, substantial evidence and are consistent with the provisions of section 364.164, Florida Statutes (2003), and we affirm the order of the Commission granting the petitions filed under section 364.164.

GENERAL BACKGROUND
Prior to 1995, "local telephone service within each of Florida's local calling areas was provided by a single company," and rates for local telephone service were regulated by the Commission. Sprint-Fla., Inc. v. Jaber, 885 So.2d 286, 288 (Fla.2004). While the enactment of chapter 95-402, Laws of Florida, in 1995 opened the local monopoly telecommunications market to competition, existing subsidies supporting the rates of local telephone service providers deterred competitors from entering the market because such subsidies tended to keep rates low and limit profits in that market. See § 364.164(1)(a), Fla. Stat. (2003); Sprint-Fla., Inc., 885 So.2d at 289. *429 Subsequently, in 2003, in an effort to address the continuing lack of competition fostered by the rate subsidies and encourage more competition in the local service market, the Florida Legislature enacted the Tele-Competition Innovation and Infrastructure Enhancement Act (Act). See ch.2003-32, Laws of Fla.[1] The Act's legislative history expressly noted its purpose "to further[ ] the development of a more competitive telecommunications market in Florida." Fla. H.R. Comm. on Bus. Reg., HB 1903 (2003) Staff Analysis (Apr. 21, 2003) (on file with comm.). Section 15 of the Act, creating section 364.164, permits an incumbent local exchange carrier (ILEC), to petition the Commission to reduce the connection and disconnection fees it charges when a call is placed between local calling areas (intrastate switched network access rates), and to make offsetting increases in basic local service rates. § 364.164(1), Fla. Stat. (2003) ("Each local exchange telecommunications company may, after July 1, 2003, petition the commission to reduce its intrastate switched network access rate in a revenue-neutral manner.").[2] The Act specifically provides that the Commission, in evaluating a petition filed pursuant to section 364.164, is required to consider, among other things, whether the petition will "[r]emove current support for basic local telecommunications services that prevents the creation of a *430 more attractive competitive local exchange market for the benefit of residential consumers," § 364.164(1)(a), Fla. Stat. (2003), and "[i]nduce enhanced market entry." § 364.164(1)(b), Fla. Stat. (2003). Further, under section 364.01(4)(a), the Commission has an ongoing duty to "ensur[e] that basic local telecommunications services are available to all consumers in the state at reasonable and affordable prices." § 364.01(4)(a), Fla. Stat. (2003).

PROCEEDINGS TO DATE
In September and October 2003, Bell-South Telecommunications, Inc. (Bell-South), Sprint-Florida, Inc. (Sprint), and Verizon Florida, Inc. (Verizon) (collectively, the ILECs), filed petitions with the Commission under section 364.164. After a three-day hearing, the Commission entered an order granting the petitions. Subsequently, the Commission entered an order on the Attorney General's and the AARP's motions for reconsideration, restating its conclusion that the petitions satisfy the provisions and mandate of section 364.164 and rejecting the argument that it failed to consider section 364.01(4)(a)'s mandate to ensure reasonable and affordable basic local telecommunications rates. Thereafter, this Court consolidated the timely filed appeals of the Commission's orders by the Attorney General, the Office of Public Counsel, and the AARP.

STANDARD OF REVIEW
We have consistently held that the Commission's orders, and concomitant interpretations of statutes and legislative policies that it is charged with enforcing, are entitled to great deference. Level 3 Communications, LLC v. Jacobs, 841 So.2d 447, 450 (Fla.2003); Gen. Tel. Co. v. Carter, 115 So.2d 554, 556 (Fla.1959). Similarly, the Commission's factual findings are entitled to a presumption of correctness. Sprint-Fla., Inc., 885 So.2d at 290.
To overcome these presumptions, a party challenging an order of the Commission on appeal has the burden of showing a departure from the essential requirements of law and the legislation controlling the issue, or that the findings of the Commission are not supported by competent, substantial evidence. W. Fla. Elec. Coop. Ass'n v. Jacobs, 887 So.2d 1200, 1204 (Fla.2004). "This Court will approve the commission's findings and conclusions if they are based upon competent, substantial evidence and are not clearly erroneous." Id.

ANALYSIS At issue in this appeal is whether the Commission has acted in accord with the legislative mandates of sections 364.01 and 364.164, and whether there is competent, substantial evidence supporting the Commission's conclusion that the petitions satisfy sections 364.01(4)(a) and 364.164(1)(a) and (b). Appellants do not challenge the Commission's conclusion that the petitions satisfy section 364.164(1)(c) and (d). For example, there is no contention that the actions of the Commission, in their net effect, are not revenue-neutral in that the rate increases are offset by reductions in other service fees. From our review of the plain language of the legislation and the evidence before the Commission, it does not appear that the Commission has strayed from the terms or the policy advanced by the Legislature. We therefore affirm the order of the Commission granting the petitions.

Section 364.164(1)(a)
At first blush, the express language of section 364.164(1)(a) appears to create a presumption that residential consumers will benefit from the removal of artificial support for basic local telecommunications *431 services. See § 364.164(1)(a), Fla. Stat. (2003) ("In reaching its decision, the commission shall consider whether granting the petition will . . . [r]emove current support for basic local telecommunications services that prevents the creation of a more attractive competitive local exchange market for the benefit of residential consumers."). However, the Commission concedes that regardless of the Legislature's language suggesting such a presumption, section 364.164(1)(a) requires the Commission to carefully consider whether, as a matter of fact, granting the petitions will create competition in the local market in a way that will ultimately benefit residential consumers.
On appeal, and in response to the appellants' challenges, the Commission cites extensive evidence supporting its findings that beneficial competition will result from the Commission's grant of the petitions and the removal of the subsidies that artificially support lower rates and discourage profit-driven competition.
First, the Commission cites the testimony of economic experts to support its findings. Applying principles of economic theory, expert witnesses at the Commission hearing on the petitions opined that the petitions do satisfy section 364.164(1)(a)'s mandate for beneficial competition. For example, Dr. Kenneth Gordon, an economist and former chairman of the Maine Public Utilities Commission and the Massachusetts Department of Utilities, testified that the outcomes sought by the petitions will result in increased economic activity, enhanced service offerings, including new, more affordable technologies,[3] and decreased long distance rates.[4] Mr. Felix Boccucci, a vice president at Knology, echoed Dr. Gordon's expert opinions and predictions, adding that granting the petitions will also create new employment opportunities and improved customer service. Dr. Carl Danner, a regulation and policy consultant and former chief of staff to the Commissioner of the California Public Utilities Commission, also agreed with Dr. Gordon and elaborated that increased competition will pressure local service providers "to operate efficiently, thereby promoting the efficient use of resources in Florida's economy." Dr. John Mayo, dean and professor of the School of Business at Georgetown University, explained that the competition will eventually put downward pressure on local telephone service rates.
The Commission also cites to empirical evidence presented at the three-day hearing supporting its findings. Dr. Gordon and Mr. Boccucci provided factual testimony that the removal of subsidies for basic local telecommunications services will create competition in the local market for the benefit of residential consumers. Dr. Gordon testified that in Maine and Massachusetts similar rate rebalancing resulted in "the more widespread availability . . . of new services and by new providers." Additionally, he noted that Maine's citizens benefited from lower long distance rates. Mr. Boccucci explained that Knology's entry into Pinellas County's basic local telecommunications market "generated . . . new services, better service and price discounts for [residential] consumers."
*432 In light of the foregoing evidence cited by the Commission and present in the record of the proceedings below, we conclude that the Commission's determination that its grant of the petitions will create competition to the benefit of residential consumers as required by section 364.164(1)(a) is supported by competent, substantial evidence. While there may be legitimate disagreements as to the weight and credibility of the evidence presented below, this Court's review is limited to a determination of whether evidence exists to support the Commission's findings. We conclude that such evidence does exist here.

BENEFIT
We also conclude that the Commission acted within the bounds of its authority and discretion in construing the term "benefit," which is not specifically defined in chapter 364, Florida Statutes (2003), but is referred to in the legislation's policy language and statements of purpose. See § 364.01(3), (4)(b),(e). Florida's rules of statutory construction require the term to be given its plain and ordinary meaning, which "`can be ascertained by reference to a dictionary.'. . . Further, it is a well-settled rule of statutory construction that in the absence of a statutory definition, courts can resort to definitions of the same term found in case law." Rollins v. Pizzarelli, 761 So.2d 294, 298 (Fla.2000) (quoting Green v. State, 604 So.2d 471, 473 (Fla.1992)); see also Level 3 Communications, LLC, 841 So.2d at 452 n. 4. Section 838.014(1), Florida Statutes (2003), the unlawful compensation statute, defines "benefit" as "gain or advantage, or anything regarded by the person to be benefited as a gain or advantage." Black's Law Dictionary defines "benefit" as an advantage or privilege. Black's Law Dictionary 150 (7th ed.1999). Webster's defines "benefit" as "something that promotes well-being" or a "useful aid." Merriam-Webster's Dictionary 106 (10th ed.1998). We are also constrained, as noted above, to give deference to the Commission's interpretation of statutory language providing for action within the Commission's area of expertise.
Accordingly, we hold that the Commission's interpretation of the term "benefit" comports with the plain meaning of the term and the announced intent of the legislation in its terms and provisions.

Section 364.164(1)(b)
We further conclude that the Commission's determination that its grant of the petitions will "[i]nduce enhanced market entry," is supported by competent, substantial theoretical and empirical evidence. § 364.164(1)(b), Fla. Stat. (2003). For example, Drs. Gordon, Mayo, and Andy Banerjee, an economist, testified that the removal of support for basic local telecommunications rates will induce market entry. Dr. Gordon explained that new competitors entered the market in response to similar basic local telecommunications rate changes in Maine and Massachusetts. According to Mr. Boccucci, the creation of section 364.164 was a significant factor inducing Knology's entry into Pinellas County's local market. Mr. Boccucci projected that "[i]f rate rebalancing is implemented, Knology has every intention to expand and compete further in Florida."

Section 364.01(4)(a)
Finally, we conclude that the Commission acted within the bounds of its authority and discretion in determining that "granting the petitions is consistent with the requirement [of section 364.01(4)(a)] to ensure that basic local service is available at reasonable and affordable prices."[5]
*433 The Commission points to the testimony of Drs. Gordon, Danner, and Staihr and Mr. John Felz, a Sprint employee responsible for developing and implementing regulatory policies. All testified that in other states, local subscribership was not adversely affected by local telephone rate increases comparable to those proposed by the instant petitions. As explained by Dr. Danner and Mr. Felz, rate increases often lead to increased local subscribership because of the benefits arising from increased competition. More specifically, Dr. Danner testified that during the federal telephone pricing reform of 1984-86, "subscribers actually increased by 4.1 million . . . in part due to the reform's beneficial impacts on universal service." Mr. Felz noted that "of [Sprint's] . . . seven other southeastern states, all of which have higher local service rates than Florida, each has increased its residence subscribership more than Florida's subscribership, except for Georgia, where subscribership has remained unchanged."
Dr. Gordon's opinion that "basic residential local rates . . . will be just as affordable to Florida customers as before," was based on his observations that the ILECs' current basic local telecommunications rates are well below the national average and that the local rate increases will be offset by decreases in long distance rates. Similarly, Mr. Ruscilli testified that Bell-South's new rates will still be the fourth lowest in the region. Dr. Mayo explained that even after implementation of the petitions, Florida consumers will continue to pay "a very small fraction," less than one percent of their annual income, for basic local telecommunications service. According to Mr. Felz, Sprint's Florida consumers have higher average incomes than consumers in any of Sprint's other seven southeastern states, and, even with the Commission's grant of Sprint's petition, Sprint's basic local rates will remain below the cost of providing basic local service.
Because of this testimony, we are compelled to agree that competent, substantial evidence exists to support the Commission's findings that its grant of the petitions will preserve reasonable and affordable rates for basic local telecommunications services despite the rate increases granted by the Commission.

CONCLUSION
In conclusion, we find that the Commission's determination that the petitions satisfy sections 364.01(4)(a) and 364.164(1)(a) and (b) is not clearly erroneous and is supported by competent, substantial record evidence.[6]
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
LEWIS, J., concurs specially with an opinion, in which ANSTEAD, J., concurs.
LEWIS, J., specially concurring.
Although I fully concur with the majority's determination affirming the Public *434 Service Commission's order granting the ILECs' petitions to reduce intrastate switched network access rates, I write separately to acknowledge that which is, in my view, undeniable tension and resulting conflict between section 364.164(1)(a)-(b) and section 364.01(4)(a) of the Florida Statutes. These specific and discrete statutory provisions impose upon the PSC dual obligations to take specific action intended to foster an environment conducive to competition while concurrently ensuring the continued affordability of basic telecommunications services. As is evident from the proceeding below and the argumentation before this Court, these statutory obligations conflict when lifted from the pages of the statute and applied in a real world context. When the supports for current local service rates are removed as required by the Legislature, prices for local service logically will initially increase. This is inherent in the statutory mandate.
At the root of the conflict is the implementation of an underlying policy decision that section 364.164(1)(a)-(b) contemplates and will generate a universe of consumer "benefits" that is broader than the simple price and affordability construct that drives section 364.01(4)(a). Section 364.01(4)(a) reiterates the PSC's ongoing duty to ensure that basic local phone service is available to all of Florida's citizens at reasonable and affordable prices. Section 364.164(1)(a)-(b), on the other hand, represents legislative policy as to how to implement a perceived benefit to Florida's consumers by encouraging competition in the market for basic local telecommunications services. As developed in the proceeding before the PSC, the notion is that the increased cost of local service creates increased competition which results in a perceived host of consumer benefits, including the ability of companies to serve a wider range of residential consumers, the creation of innovative service packages, and the potential to offset the cost of other telecommunications services. This comes, however, at the "cost" of increased prices to the Florida consumer for basic local service. As required by the statutes and addressed by the evidence and expert comments submitted to the PSC, the removal of supports that have enabled ILECs to keep rates for local services low is a mandated part of the approach. This is a policy decision inherent in the statutes. Thus, the statutes reflect the policy that the benefits of increased competition cannot be achieved without an increase in the rates for local telecommunications services. In some circumstances, such increases will, most assuredly, negatively impact the affordability of basic local telecommunications services for certain of Florida's citizens in contravention of section 364.01(4)(a).
However apparent and inevitable the clash between section 364.164(1)(a)-(b) and section 364.01(4)(a) may be, it is not one this Court is institutionally empowered to address. As ably articulated by the majority opinion, the Court's standard of review in this inquiry is justifiably and sensibly narrow. We are constrained to consider whether the appellants have satisfied the burden of demonstrating that the PSC's determination granting the ILECs' petitions either departed from the essential requirements of the law and governing legislation, or was not supported by competent, substantial evidence. I agree with the majority that they have not. As pertains to the inherently conflicting obligations imposed by the governing statutory provisions, the true and only recourse for all concerned stakeholders lies in the halls of the Florida Legislature.
ANSTEAD, J., concurs.
NOTES
[1] Section 364.164, created by section 15 of the Act, provides, in pertinent part:

(1) Each local exchange telecommunications company may, after July 1, 2003, petition the commission to reduce its intrastate switched network access rate in a revenue-neutral manner. . . . In reaching its decision, the commission shall consider whether granting the petition will:
(a) Remove current support for basic local telecommunications services that prevents the creation of a more attractive competitive local exchange market for the benefit of residential consumers.
(b) Induce enhanced market entry.
(c) Require intrastate switched network access rate reductions to parity over a period of not less than 2 years or more than 4 years.
(d) Be revenue neutral as defined in subsection (7) within the revenue category defined in subsection (2).
(2) If the commission grants the local exchange telecommunications company's petition, the local exchange telecommunications company is authorized, the requirements of s. 364.051(3) notwithstanding, to immediately implement a revenue category mechanism consisting of basic local telecommunications service revenues and intrastate switched network access revenues to achieve revenue neutrality. . . .
. . . .
(5) As used in this section, the term "parity" means that the local exchange telecommunications company's intrastate switched network access rate is equal to its interstate switched network access rate in effect on January 1, 2003, if the company has more than 1 million access lines in service. If the company has 1 million or fewer access lines in service, the term "parity" means that the company's intrastate switched network access rate is equal to 8 cents per minute. This section does not prevent the company from making further reductions in its intrastate switched network access rate, within the revenue category established in this section, below parity on a revenue-neutral basis, or from making other revenue-neutral rate adjustments within this category.
. . . .
(7) As used in this section, the term "revenue neutral" means that the total revenue within the revenue category established pursuant to this section remains the same before and after the local exchange telecommunications company implements any rate adjustments under this section. . . . Billing units associated with pay telephone access lines and Lifeline service may not be included in any calculation under this subsection.
(Emphasis added.)
[2] An ILEC's incentive to file a petition under section 364.164 is the possible gradual reduction of the Commission's regulatory oversight. See § 364.051(6)-(8), Fla. Stat. (2003).
[3] Mr. Wayne Fonteix, director of regulatory affairs at AT & T, also opined that a grant of the petitions will result in technological innovation. Similarly, Dr. Brian Staihr, senior regulatory economist at Sprint, testified that as a result of a grant "more customers will be offered more choices."
[4] Mr. John Ruscilli, a senior director at Bell-South, agreed that the granting of the relief sought in the petitions will result in decreased long distance rates.
[5] Section 364.01(4)(a) provides:

(4) The commission shall exercise its exclusive jurisdiction in order to:
(a) Protect the public health, safety, and welfare by ensuring that basic local telecommunications services are available to all consumers in the state at reasonable and affordable prices.
[6] We have considered, but reject, the argument that the Commission erred in failing to reconsider the petitions in light of United States Telecom Ass'n v. Fed. Communications Comm'n, 359 F.3d 554 (D.C.Cir.), cert. denied, ___ U.S. ___, 125 S.Ct. 313, ___ L.Ed.2d ___, and cert. denied, ___ U.S. ___, 125 S.Ct. 316, ___ L.Ed.2d ___, and cert. denied, ___ U.S. ___, 125 S.Ct. 345, 160 L.Ed.2d 223 (2004).