635 So.2d 941 (1994)
FLORIDA GAS TRANSMISSION COMPANY, Appellant,
v.
PUBLIC SERVICE COMMISSION, Appellee.
No. 82171.
Supreme Court of Florida.
April 21, 1994.
*942 William L. Hyde, Earl, Blank, Kavanaugh & Stotts, P.A., Tallahassee, for appellant.
Robert D. Vandiver, Gen. Counsel, David E. Smith, Director of Appeals and Michael A. Palecki, FL Public Service Com'n, Tallahassee, James P. Fama, Sr. Counsel, FL Power Corp., St. Petersburg, and Peter M. Dunbar, Pennington, Haben, Wilkinson, Culpepper, Dunlap, Dunbar, Richmond & French, P.A., Tallahassee, on behalf of Sunshine Pipeline Partners, for appellees.
OVERTON, Justice.
Florida Gas Transmission Company (Florida Gas) appeals an order of the Florida Public Service Commission (the Commission) in which the Commission determined that a need exists for a second natural gas transmission pipeline in peninsular Florida and that the pipeline proposed by SunShine Pipeline Partners (SunShine) is the appropriate project to fill this need. Florida Gas opposes these findings, asserting (1) that section 403.9422, Florida Statutes (Supp. 1992), which grants the Commission the authority to determine pipeline needs and locations, is unconstitutional and (2) that the Commission's order is inadequate and fails to comply with certain requirements of chapter 120, Florida Statutes (1993). We have jurisdiction pursuant to article V, section 3(b)(2), of the Florida Constitution. For the reasons expressed, we affirm the Commission's order, finding that the authorizing statute is constitutional and that the order of the Commission is proper.
The record reflects that, in early 1993, SunShine filed an application for determination of need with the Commission pursuant to section 403.9422. In its application, SunShine was seeking permission to construct a major natural gas transmission system (the proposed pipeline) to serve peninsular Florida. The proposed pipeline would begin at a point in Okaloosa County and extend east and south to serve natural gas markets in central Florida.
Several intervenors opposed the need determination, but the principal opposition came from Florida Gas, the company that, for over thirty years, has controlled the only other natural gas pipeline serving the area in which SunShine proposes to offer service. After hearing from interested parties, the Commission issued its final order, which was thirty-three pages in length, and stated in pertinent part as follows:
SunShine's project is designed to supply an additional 250,000 Mcf per day of natural gas transmission capacity in 1995, 425,000 Mcf per day in 1998, and 550,000 Mcf per day in 1999 to fill that demand. SunShine provided evidence to support the demand for the additional transmission capacity in two ways; a forecast of electric utilities' gas capacity requirements for the years 2000 and 2010, and the signed precedent agreements of prospective shippers on the SunShine pipeline.
SunShine's witnesses Rose and Burgin testified that the major demand for additional gas transmission capacity into the state comes from the electric generation industry. Mr. Rose provided a forecast that estimated the demand for pipeline capacity (gas capacity requirements) by considering both the increased demand for capacity to serve existing oil/gas steam powerplants in Florida that will convert to natural gas, and the increased demand for capacity to serve new gas-fired powerplants.
... .
Mr. Rose then estimated the firm gas pipeline capacity in the years 2000 and 2010 that would be necessary to serve the electric generating requirements of new gas powerplants. Mr. Rose assumed on a conservative basis that 50 percent of the increase in electricity generation requirements *943 would come from firm gas-fired power generation. He based this assumption on Florida utility plans that show that two-thirds of the planned capacity additions will use natural gas as the principal fuel.
... .
B. Precedent Agreements
SunShine has obtained signed precedent agreements for approximately 71 percent of the capacity proposed for 1995, and approximately 58 percent of the capacity proposed for 1998. The ultimate initial design capabilities of SunShine's proposed project are achieved in 1999... .
... .
C. Natural Gas Delivery Reliability and Integrity
We have found that SunShine has adequately demonstrated that there is a demand for additional natural gas capacity into the state. SunShine has also adequately demonstrated that neither existing pipeline companies, nor approved capacity additions to existing pipelines in Florida have sufficient excess capacity to satisfy the forecasted growth in capacity requirements for natural gas.
... .
E. Pipeline-to-Pipeline Competition in Florida
The citizens of the State of Florida will benefit in a variety of ways from competition between natural gas transmission pipelines. Those benefits include additional gas supplies for cleaner electric generation, potentially lower electric and gas utility rates, the economic multiplier effect within the state's economy resulting from purchases of pipeline and materials, and employment of Florida citizens... .
The order further contained an analysis of the expert testimony setting forth a need for a pipeline and contained express reasons why the SunShine pipeline is the appropriate project to fill this need.
Florida Gas challenges this order on the grounds that section 403.9422 is unconstitutional and that the Commission, in its order, failed to explain its rejection of certain proposed findings of fact as required by chapter 120.

Constitutionality of Section 403.9422
Under its first argument, Florida Gas contends that Section 403.9422 grants unbridled discretion to the Commission to determine the need for additional natural gas pipelines. To understand the authority granted to the Commission, it is helpful to examine the history of section 403.9422. The origins of that statute can be traced back to 1978, when Congress passed the Natural Gas Policy Act of 1978. See 15 U.S.C.A. §§ 3301-3432 (1988) (the Act). The Act's fundamental purpose was to protect interstate gas consumers from the monopoly powers of the pipeline industry. Associated Gas Distribs. v. FERC, 824 F.2d 981, 995 (D.C. Cir.1987), cert. denied, 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988). The Act clearly was intended to improve the competitive structure of the natural gas industry and was a means to ensure that the consumer has "access to an adequate supply of gas at a reasonable price." Tejas Power Corp. v. FERC, 908 F.2d 998, 1003 (D.C. Cir.1990).
Since the Act's passage, the Federal Energy Regulatory Commission (FERC) has continued its attempt to reform various practices in the natural gas industry by issuing a series of policy orders. Pertinent here is FERC's issuance of Order No. 636, 57 Fed. Reg. 13, 267 (1992) (codified at 18 C.F.R. pt. 284), which, among other things, has as its purpose increased competition in the natural gas industry by creating open access transportation and unbundled pipeline services. Under this order, pipeline operators are required to provide capacity to natural gas shippers on a non-discriminatory basis, which has improved access to gas supplies but has done nothing to increase existing pipeline capacity. Consequently, after issuance of Order No. 636, the major problem in states where natural gas usage levels are predicted to rise is no longer the allocation of the existing pipeline space but the lack of total pipeline capacity.
In recognizing that natural gas usage levels would continue to rise in Florida and that a need existed to ensure the reliable and safe delivery of natural gas in Florida, the legislature *944 enacted the Natural Gas Transmission Pipeline Siting Act in 1992. §§ 403.9401-25, Fla. Stat. (Supp. 1992) (the Siting Act). Through this act, the legislature established a procedure for coordinating a permitting process for locating, constructing, and maintaining additional natural gas transmission pipelines and their corridors in Florida. The Siting Act was enacted to further the legislative goal of ensuring that the construction and maintenance of these pipelines would produce "minimal adverse effect on the environment and public health, safety, and welfare." § 403.9402, Fla. Stat. (Supp. 1992). Under the Siting Act, any entity wishing to construct additional natural gas transmission pipelines must first petition the Commission for a determination of need. Section 403.9422 defines the process required to determine need and specifically provides that the Commission is to be the sole forum for this determination. § 403.9422(1)(c).[1]
It was under section 403.9422 that SunShine petitioned the Commission for a determination of need, and it is this provision that Florida Gas contends is an unconstitutional delegation of authority to the Commission in violation of the separation of powers doctrine. Specifically, Florida Gas contests the following portion of the statute:
In the determination of need, the commission shall take into account the need for natural gas delivery reliability, safety, and integrity; the need for abundant, cleanburning natural gas to assure the economic well-being of the public; the appropriate commencement and terminus of the line; and other matters within its jurisdiction deemed relevant to the determination of need.
§ 403.9422(1)(b), Fla. Stat. (Supp. 1992). Florida Gas argues that this provision impermissibly delegates to the Commission the authority to determine law. In particular, Florida Gas focuses on the portion of section 403.9422(1)(b) that allows the Commission to consider "other matters within its jurisdiction deemed relevant to the determination of need." According to Florida Gas, this portion of section 403.9422 changes the Commission's role from an administrative entity to a "lawmaker" by providing the Commission with unbridled discretion in determining the need for natural gas pipelines in the state.
We fully understand that a legislative delegation of power to a legislative or executive agency permitting an agency to declare what the law is violates Florida's separation of powers doctrine. Department of Ins. v. Southeast Volusia Hosp. Dist., 438 So.2d 815 (Fla. 1983), appeal dismissed, 466 U.S. 901, 104 S.Ct. 1673, 80 L.Ed.2d 149 (1984); Askew v. Cross Key Waterways, 372 So.2d 913 (Fla. 1978). These principles, however, do not prohibit the legislature from delegating the authority to carry out legislative policy when such delegation is accompanied by proper standards and guidelines.
We find that section 403.9422 provides sufficient guidelines to overcome a claim that the legislature unconstitutionally delegated its power to the Public Service Commission. Under the express directions of this statute, the Commission must evaluate the need for natural gas pipelines and must consider the reliability, safety, delivery, and integrity of the proposed pipeline. The Commission must also determine the economic well-being of the public, the proposed pipeline's commencement and termination points, and its effect on the environment of this state. The fact that the statute also allows the Commission to consider "other matters within its jurisdiction" does not represent an attempt by the legislature to abdicate its constitutional lawmaking responsibility. To the contrary, we find that section 403.9422 sets forth very specific and mandatory guidelines for the Commission to carry out the purpose of the legislation, and, in doing so, establishes the Commission as a body with the appropriate expertise to evaluate the need, complex market conditions, environmental effect and other matters relating to a proposed pipeline, as well as the overall *945 fitness of the applicant. We conclude that section 403.9422 sets forth sufficient guidelines and standards to limit the Commission's authority and does not constitute an unbridled delegation of authority.

Sufficiency of the Commission's Factual Findings
Florida Gas's second contention relates to the Commission's final order. It asserts that the order is incomplete as a matter of law because the order fails to explain the policy rationale of the Commission's decision, as required by sections 120.57 and 120.59(2), Florida Statutes (1993). Specifically, Florida Gas asserts that the Commission has not complied with the criteria of section 120.59(2), which requires that all administrative orders "must include a ruling upon each proposed finding and a brief statement of the grounds for denying the application or request." Additionally, Florida Gas argues that, because of the Commission's inadequate order, this Court is being deprived of a complete record for review as required by section 120.68, Florida Statutes (1993). We disagree.
We find that the Commission's singlespaced, thirty-three page order in this case, when taken as a whole, fully and adequately discusses the reasoning behind its decision, as required by law. The fact that some of Florida Gas's proposed findings of fact were expressly rejected by the Commission as being "conclusory" or "argumentative" does not require a finding that this order is incomplete. We conclude that the Commission's order meets all statutory requirements.
Accordingly, the order of the Public Service Commission approving the need for an additional gas transmission pipeline to be constructed by SunShine Pipeline Partners is affirmed.
It is so ordered.
BARKETT, C.J., and McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] The language in section 403.9422 is similar to the language in other sections of the Florida Statutes under which the legislature has empowered the Commission to regulate certain industries. For example, the language in section 403.519, Florida Statutes (1993), governing the determination of need for electrical power plants, provides that the Commission shall be the sole forum for determining electrical power plant need.