PER CURIAM.
Southern Alliance for Clean Energy (SACE) appeals a final order of the Florida Public Service Commission (PSC) granting the petitions of Florida Power & Light Company and Progress Energy Florida, Inc. (respectively FPL and PEF, together “the utility companies”) to recover certain costs. Specifically, the final order authorizes the utility companies to recover through customer rates the pre-construction costs of their respective new nuclear power plant projects under section 866.93, Florida Statutes (2010). We have jurisdiction. See art. V, § 3(b)(2), Fla. Const.
SACE argues that section 366.93 unconstitutionally delegates legislative authority to the PSC and, alternatively, that the PSC’s order is arbitrary and unsupported by competent, substantial evidence. We reject both arguments and affirm. In so doing, we stress that “it is not this Court’s function to substitute its judgment for that of the Legislature as to the wisdom or policy of a particular statute.” State v. Rife, 789 So.2d 288, 292 (Fla.2001). Authorizing recovery of preconstruction costs through customer rates in order to promote utility company investment in new nuclear power plants, even though those plants might never be built, is a policy decision for the Legislature, not this Court.
I. FACTS
Utility companies are not normally allowed to recover from their customers the costs of constructing new power plants until after the plants have been completed and placed in commercial operation, whereupon the costs become part of the utility companies’ rate base. See In Re Nuclear Cost Recovery Clause, Docket No. 110009-EI, Order No. PSC-11-0547FOF-EI, 2011 WL 5904236, at *1 (F.P.S.C. Nov. 23, 2011) (“Final Order”). But the Legislature created an exception in 2006 to promote utility company investment in nuclear power plants. Specifically, the Legislature added section 403.519(4)(e), Florida Statutes (2006), to provide that
[a]fter a petition for determination of need for a nuclear power plant has been granted, the right of a utility to recover any costs incurred prior to commercial operation, including, but not limited to, *746 costs associated with the siting, design, licensing, or construction of the plant, ■ shall not be subject to challenge unless and only to the extent the [PSC] finds, based on a preponderance of the evidence adduced at a hearing before the commission under s. 120.57, that certain costs were imprudently incurred.
Ch.2006-230, § 43, at 2647, Laws of Fla. The Legislature simultaneously created section 366.93(2), Florida Statutes (2006), to direct the PSC to “establish, by rule, alternative cost recovery mechanisms for the recovery of costs incurred in the siting, design, licensing, and construction of a nuclear power plant.” Ch.2006-230, § 44(2), at 2648, Laws of Fla. The PSC in turn adopted Florida Administrative Code Rule 25-6.0423 in 2007 to implement the statute.
In 2008, the PSC granted the petitions for determination of need for new nuclear power plants proposed by FPL and PEF. The PSC has since issued orders granting the utility companies’ annual petitions for recovery of their associated preconstruction costs pursuant to the above provisions. In one such order, the PSC ruled that “a utility must continue to demonstrate its intent to build the nuclear power plant for which it seeks advance recovery of costs to be in compliance with Section 366.93, F.S.” In Re Nuclear Cost Recovery Clause, Docket No. 100009-EI, Order No. PSC-11-0095-FOF-EI, 2011 WL 365049, at *5 (F.P.S.C. Feb. 2, 2011).
In opposition to FPL and PEF’s most recent cost recovery petitions, SACE [1] argued that the utility companies’ respective preconstruction activities creating only an “option to build” (e.g., obtaining licenses and approvals necessary to construct and operate the plants, performing work needed to support environmental permitting, continuing relevant negotiations, etc.) did not demonstrate their “intent to build” as required under Order No. PSC-11-0095FOF-EI, reasoning that neither FPL nor PEF had actually committed to build the plants and that the projects were tentative and uncertain at best. See Final Order, 2011 WL 5904236, at *5-*6, *71-*74. The PSC rejected that argument and in its final order authorized the utility companies to include the nuclear cost recovery amounts of $196,088,824 (FPL) and $85,951,036 (PEF) in establishing their respective 2012 capacity cost recovery factors.[2] See id. at *91. SACE now appeals.
II. ANALYSIS
Section 366.93, Florida Statutes (2010), is titled “[c]ost recovery for the siting, design, licensing, and construction of nuclear and integrated gasification combined cycle power plants,” and provides in pertinent part:
(1) As used in this section, the term:
(a) “Cost” includes, but is not limited to, all capital investments, including rate of return, any applicable taxes, and all expenses, including operation and maintenance expenses, related to or resulting from the siting, licensing, design, construction, or operation of the nuclear power plant, including new, expanded, or relocated electrical transmission lines or facilities of any size that are necessary *747 thereto, or of the integrated gasification combined cycle power plant.
[[Image here]]
(f) “Preconstruction” is that period of time after a site, including any related electrical transmission lines or facilities, has been selected through and including the date the utility completes site clearing work. Preconstruction costs shall be afforded deferred accounting treatment and shall accrue a carrying charge equal to the utility’s allowance for funds during construction (AFUDC) rate until recovered in rates.
(2) Within 6 months after the enactment of this act, the commission shall establish, by rule, alternative cost recovery mechanisms for the recovery of costs incurred in the siting, design, licensing, and construction of a nuclear power plant, including new, expanded, or relocated electrical transmission lines and facilities that are necessary thereto, or of an integrated gasification combined cycle power plant. Such mechanisms shall be designed to promote utility investment in nuclear or integrated gasifi-cation combined cycle power plants and allow for the recovery in rates of all prudently incurred costs and shall include, but not be limited to:
(a) Recovery through the capacity cost recovery clause of any preconstruction costs.
(b) Recovery through an incremental increase in the utility’s capacity cost recovery clause rates of the carrying costs on the utility’s projected construction cost balance associated with the nuclear or integrated gasification combined cycle power plant. To encourage investment and provide certainty, for nuclear or integrated gasification combined cycle power plant need petitions submitted on or before December 31, 2010, associated carrying costs shall be equal to the pretax AFUDC in effect upon this act becoming law. For nuclear or integrated gasification combined cycle power plants for which need petitions are submitted after December 31, 2010, the utility’s existing pretax AFUDC rate is presumed to be appropriate unless determined otherwise by the commission in the determination of need for the nuclear or integrated gasification combined cycle power plant.
(3) After a petition for determination of need is granted, a utility may petition the commission for cost recovery as permitted by this section and commission rules.
[[Image here]]
(6) If the utility elects not to complete Qr is precluded from completing construction of the nuclear power plant, including new, expanded, or relocated electrical transmission lines or facilities necessary thereto, or of the integrated gasification combined cycle power plant, the utility shall be allowed to recover all prudent preconstruction and construction costs incurred following the commission’s issuance of a final order granting a determination of need for the nuclear power plant and electrical transmission lines and facilities necessary thereto or for the integrated gasifi-cation combined cycle power plant. The utility shall recover such costs through the capacity cost recovery clause over a period equal to the period during which the costs were incurred or 5 years, whichever is greater. The unrecovered balance during the recovery period will accrue interest at the utility’s weighted average cost of capital as reported in the commission’s earnings surveillance reporting requirement for the prior year.
SACE argues (1) that section 366.93 delegates legislative authority to the PSC in violation of the separation of powers clause of the Florida Constitution and, alterna *748 tively, (2) that the PSC’s finding that the utility companies demonstrated an intent to build for cost recovery purposes under the statute is arbitrary and unsupported by competent, substantial evidence. We reject both arguments.
A. Separation of Powers
The PSC did not, and indeed could not, rule on the constitutionality of section 366.93, Florida Statutes (2010). See Fla. Hosp. v. Agency for Health Care Admin., 823 So.2d 844, 849 (Fla. 1st DCA 2002) (recognizing that administrative agencies lack to power to consider or determine constitutional issues). We therefore consider this matter as one of first impression under the de novo standard of review. See generally Crist v. Ervin, 56 So.3d 745, 747 (Fla.2010) (recognizing that “[t]he constitutionality of a statute is a question of law subject to de novo review”). In so doing, we are obligated to accord section 366.93 a presumption of constitutionality and construe that statute to effect a constitutional outcome if possible. See id.
Article II, section 3 of the Florida Constitution dictates that “[t]he powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.” Under this separation of powers clause, the non-delegation doctrine requires that “fundamental and primary policy decisions ... be made by members of the legislature who are elected to perform those tasks, and [that the] administration of legislative programs must be pursuant to some minimal standards and guidelines ascertainable by reference to the enactment establishing the program.” Askew v. Cross Key Waterways, 372 So.2d 913, 925 (Fla.1978). In other words, statutes granting power to an administrative agency “must clearly announce adequate standards to guide ... in the execution of the powers delegated. The statute must so clearly define the power delegated that the administrative agency is precluded from acting through whim, showing favoritism, or exercising unbridled discretion.” Lewis v. Bank of Pasco Cnty., 346 So.2d 53, 55-56 (Fla.1976).[3]
As applied here, the Legislature in section 366.93 made the fundamental and primary policy decision to “promote utility investment in nuclear or integrated gasifi-cation combined cycle power plants and allow for the recovery in rates of all prudently incurred costs.” § 366.93(2), Fla. Stat. (2010). SACE asserts that the statute “contains no standards whatsoever to guide the [PSC] in implementing and administering these general policies.” To the contrary, in directing the PSC to establish the necessary alternative cost recovery mechanisms, the Legislature specified that those mechanisms were “for the recovery of costs incurred in the siting, design, licensing, and construction of a nuclear power plant, including new, expanded, or relocated electrical transmission lines and facilities that are necessary *749 thereto, or of an integrated gasification combined cycle power plant.” Id.
The Legislature also specified that the mechanisms “shall include, but not be limited to ... [r]eeovery through the capacity cost recovery clause of any preconstruction costs ... [and] through an incremental increase in the utility’s capacity cost recovery clause rates of the carrying costs on the utility’s projected construction cost balance associated with the nuclear or integrated gasification combined cycle power plant.” § 366.93(2)(a)-(b), Fla. Stat. (2010); see also § 366.93(l)(a), (f), Fla. Stat. (2010) (further specifying the meaning of the terms “cost” and “preconstruction” as used in the statute). SACE argues that requiring the mechanisms to be designed to “include, but not be limited to” recovery through the two specified examples delegates to the PSC the impermissibly broad authority of determining potentially limitless and absurd mechanisms for recovery beyond those two examples.
A similar separation of powers claim was raised in Florida Gas Transmission Co. v. Public Service Commission, 635 So.2d 941, 944 (Fla.1994), where the statute at issue directed that the PSC consider several specified factors as well as “other matters within its jurisdiction deemed relevant to the determination of need” for additional natural gas pipelines. In rejecting the claim, this Court concluded that the clause did “not represent an attempt by the legislature to abdicate its constitutional lawmaking responsibility,” finding to the contrary that the subject statute set forth “very specific and mandatory guidelines for the [PSC] to carry out the purpose of the legislation, and, in doing so, established] the [PSC] as a body with the appropriate expertise to evaluate the need, complex market conditions, environmental effect and other matters relating to a proposed pipeline, as well as the overall fitness of the applicant.” Id. at 944-45. Much the same can be said in the present case. See also AT & T Commc’ns of the S. States, Inc. v. Marks, 515 So.2d 741, 743-44 (Fla.1987) (rejecting similar separation of powers claim where the statute at issue allowed the PSC to consider certain specified factors, as well as “[a]ny other factors that [it] considers relevant” in determining the public interest in licensing phone companies to engage in competition).
The Legislature further specified that the mechanisms shall “allow for the recovery in rates of all prudently incurred costs.” § 366.93(2), Fla. Stat. (2010). SACE argues that “ ‘prudently incurred’ costs is not an objective standard which provides any real guidance for, and/or restrictions on, the [PSC’s] authority to determine how far it should go in promoting utility investment in nuclear power.” But the companion statute to section 366.93 illuminates by negative implication that “[p]roceeding with the construction of the nuclear or integrated gasification combined cycle power plant ... shall not constitute or be evidence of imprudence” and that “[ijmprudence shall not include any cost increases due to events beyond the utility’s control.” § 403.519(4)(e), Fla. Stat. (2010); see generally Fla. Dep’t of State, Div. of Elections v. Martin, 916 So.2d 763, 768 (Fla.2005) (recognizing that the doctrine of in pari materia requires that statutes relating to the same subject be construed together to harmonize the statutes and give effect to legislative intent).
Moreover, statutes and caselaw routinely apply the prudence standard in the PSC context. See, e.g., § 366.82(11), Fla. Stat. (2010) (providing that “[reasonable and prudent unreimbursed costs projected to be incurred ... may be added to the rates which would otherwise be charged by a utility upon approval by the [PSC] ”); § 367.0817(3), Fla. Stat. (2010) (providing that “[a]ll prudent costs of a reuse project *750 shall be recovered in rates”); Meadowbrook Util. Sys., Inc. v. Fla. Pub. Serv. Comm’n, 518 So.2d 826, 327 (Fla. 1st DCA 1987) (holding that “[h]ere the [PSC] determined that the rate case expense was prudent and we see nothing that requires us to reverse that determination”).
As explained by the PSC in the present case, its “standard for determining prudence is well documented in our past Orders. That standard is ‘... what a reasonable utility manager would have done, in light of the conditions and circumstances that were known, or should [have] been known, at the time the decision was made.’ ” Final Order, 2011 WL 5904286, at 20. Like the term “prudent” here, the term “advertising” has a fixed and definite meaning in the tax context. In re Advisory Opinion to the Governor, 509 So.2d 292 (Fla.1987). As such, this Court in In re Advisory Opinion did “not believe the legislature doomed the viability of [the tax statute at issue] by failing to define such terms as ‘advertising’ and ‘market coverage.’” Id. at 312; see also Dep’t of Ins. v. S.E. Volusia Hosp. Dist, 438 So.2d 815, 819 (Fla.1983) (finding adequate the legislative delegation for agency to establish certain fees on “an actuarially sound basis” where “[t]he courts of Florida have found concepts of actuarial soundness to be a meaningful standard”).
Furthermore, “[g]iven the arcane complexities of utility rate-making, the legislature’s decision to vest supervision of rates and service exclusively in the [PSC] must be respected.” Fla. Power & Light Co. v. Albert Litter Studios, Inc., 896 So.2d 891, 896 (Fla. 3d DCA 2005). As this Court recognized in the similarly arcane tax context:
The specificity with which the legislature must set out statutory standards and guidelines may depend upon the subject matter dealt with and the degree of difficulty involved in articulating finite standards. The same conditions that may operate to make direct legislative control impractical or ineffective may also, for the same reasons, make the drafting of detailed or specific legislation for the guidance of administrative agencies impractical or undesirable. State, Department of Citrus v. Griffin, 239 So.2d 577 (Fla.1970); Burgess v. Florida Department of Commerce, 436 So.2d 356 (Fla. 1st DCA 1983), review denied, 447 So.2d 885 (Fla.1984). In the context of a comprehensive taxation statute extending Florida’s sales and use tax to the majority of services marketed in the state, courts cannot realistically require the legislature to dictate every conceivable application of the law down to the most minute detail. As we noted in Microtel, Inc. v. Florida Public Service Commission, 464 So.2d 1189, 1191 (Fla.1985), the subordinate factors in complex areas such as taxation should be left to the appropriate agency having expertise and flexibility. Otherwise, the legislature would be forced to remain in perpetual session and devote a large portion of its time to regulation. Id.
In re Advisory Opinion, 509 So.2d at 311-12.
In other words, subordinate functions like those at issue here “may be transferred by the legislature to permit administration of legislative policy by an agency with the expertise and flexibility needed to deal with complex and fluid conditions.” Microtel, 464 So.2d at 1191. Establishing the subject alternative cost recovery mechanisms is simply not a “fundamental legislative task” like the one at issue in Cross Key Waterways, 372 So.2d at 919 (holding that “[t]he [statutory] criteria for designation of an area of critical state concern ... are constitutionally defective because they reposit in [an agency] the fundamental legislative task of determining which geo *751 graphic areas and resources are in greatest need of protection”).
In sum, we find that section 366.93 is not “so lacking in guidelines that neither the agency nor the courts can determine whether the agency is carrying out the intent of the legislature.” Id. at 918-19. As in AT & T, there is “no indication that the legislative policy-making function has been usurped by or improperly transferred to the PSC,” or any indication that' its disputed order is “aimed at anything more than fostering [the legislative policy] to the fullest extent now possible.” 515 So.2d at 743; see also S.E. Volusia Hosp. Dist., 438 So.2d at 820 (recognizing that “when an interpretation upholding the constitutionality of a statute is available to this Court, [it] must adopt that construction”). We accordingly find no separation of powers violation and affirm on this issue.
B. Intent to Build
SACE argued below that the utility companies’ preconstruction activities create ing only an “option to build” their respective nuclear power plants (e.g., obtaining licenses and approvals necessary to construct and operate the plants, performing work needed to support environmental permitting, continuing relevant negotiations, etc.) did not demonstrate their “intent to build” those plants for cost recovery purposes under section 366.93. Final Order, 2011 WL 5904236, at *5-*6, *71-*74. In analyzing this issue, the PSC considered the main question to be whether a utility company must simultaneously engage in plant siting, design, licensing, and construction in order to meet the requirements of the statute. Id. at *4, *72. The PSC ruled:
Based upon our analysis of the applicable statute, our prior Orders, and prior Florida case law, we do not find that a utility must engage in the siting, design, licensing, and construction of - nuclear power plant activities simultaneously in order to meet the statutory requirements of Section 366.93, F.S. We note our decision in Order No. PSC-11-0095FOF-EI, where we found that a utility must continue to demonstrate its intent to build the nuclear power plant for which it seeks advance recovery of costs to be in compliance with Section 366.93, F.S. As discussed in that Order, we find that there are various phases of constructing a nuclear power plant, including the siting, design, licensing, and building of the plant. These phases generally cannot occur simultaneously. As stated in [the Order], Section 366.93(l)(f), F.S., contemplates that there are various phases of constructing a nuclear power plant by explicitly establishing demarcations of what is pre-construction and what is construction of a nuclear power plant. For example, Section. 366.93(l)(f), F.S., defines the word “preconstruction.” Under the statute:
Preconstruction is that period of time after a site, including any related electrical transmission lines or facilities, has been selected through and including the date the utility completes site clearing work. Preconstruction costs shall be afforded deferred accounting treatment and shall accrue a carrying charge equal to the utility’s allowance for funds during construction (AFUDC) rate until recovered in rates.
Furthermore, Section 366.93(2)(a), F.S., provides that recovery of any precon-struction costs will occur through the Capacity Cost Recovery Clause. Rule 25-6.0423(2)(h), F.A.C., which implements Section 366.93(l)(f), F.S., provides:
Site selection costs and pre-construction costs include, but are not limited to: any and all costs associated with preparing, reviewing and defending a *752 Combined Operating License (COL) application for a nuclear power plant; costs associated with site and technology selection; costs of engineering, designing, and permitting the nuclear or integrated gasification combined cycle power plant; costs of clearing, grading, and excavation; and costs of on-site construction facilities (i.e., construction offices, warehouses, etc.).
... [A] strict interpretation of Section 366.93, F.S., to require a utility to engage in the siting, design, licensing, and construction of nuclear power plant activities simultaneously, would be an incorrect interpretation of the statute, and inconsistent with our precedent.
Final Order, 2011 WL 5904236, at *6-*7; accord id. at *72. The PSC in turn found the preconstruction costs at issue to be recoverable under section 366.93, thereby necessarily construing the statute to mean that preconstruction activities creating an option to build can demonstrate a utility company’s intent to build, and thus its eligibility to recover associated costs under the statute.
SACE argues that the PSC’s order based on this construction of the law is arbitrary and unsupported by competent substantial evidence. We disagree. As we have repeatedly held:
[The Public Service] Commission’s orders, and concomitant interpretations of statutes and legislative policies that it is charged with enforcing, are entitled to great deference. Level 3 Communications, LLC v. Jacobs, 841 So.2d 447, 450 (Fla.2003); Gen. Tel. Co. v. Carter, 115 So.2d 554, 556 (Fla.1959). Similarly, the Commission’s factual findings are entitled to a presumption of correctness. Sprint-Fla., Inc. [v. Jaber, 885 So.2d 286, 290 (Fla.2004) ].
To overcome these presumptions, a party challenging an order of the Commission on appeal has the burden of showing a departure from the essential requirements of law and the legislation controlling the issue, or that the findings of the Commission are not supported by competent, substantial evidence. W. Fla. Elec. Coop. Ass’n v. Jacobs, 887 So.2d 1200, 1204 (Fla.2004). “This Court will approve the commission’s findings and conclusions if they are based upon competent, substantial evidence and are not clearly erroneous.” Id.
Crist v. Jaber, 908 So.2d 426, 430 (Fla.2005).
The PSC’s construction of section 366.93 is not clearly erroneous. As recognized by the PSC in its final order, subsections (l)(f) and (2)(a) of the statute together identify “preconstruction” as a distinct period of time in the process and specifically provide for the recovery of any prudent preconstruction costs. Accord § 366.93(6), Fla. Stat. (2010) (similarly recognizing the distinction in referring to recovery of all prudent “preconstruction and construction costs”). While the statute conjunctively refers to siting, design, licensing, and construction of a nuclear power plant in authorizing the PSC to establish mechanisms for recovery of costs, it in turn disjunctively defines the term “cost” as including expenses related to siting, licensing, design, construction, or operation of the plant. See § 366.93(l)(a) & (2), Fla. Stat. (2010). Moreover, the companion statute providing for recovery under chapter 366 likewise disjunctively specifies that:
the right of a utility to recover any costs incurred prior to commercial operation, including, but not limited to, costs associated with the siting, design, licensing, or construction of the plant ... shall not be subject to challenge unless and only to the extent the commission finds, based on a preponderance of the evidence adduced at a hearing before the commission under s. 120.57, that certain costs were imprudently incurred.
*753 § 403.519(4)(e), Fla. Stat. (2010) (emphasis added); see generally Martin, 916 So.2d at 768 (recognizing that the doctrine of in pari materia requires that statutes relating to the same subject be construed together to harmonize the statutes and give effect to legislative intent).
The operative statutes therefore support the PSC’s conclusion that utilities need not engage in siting, design, licensing, and construction simultaneously in order to satisfy section 366.93 and, by extension, that pre-construction activities creating an option to build can demonstrate a utility’s intent to build for cost recovery purposes under the statute. SACE argues to the contrary that “[t]his ‘option creation’ approach does not satisfy the Commission’s ‘intent to build’ requirement, as neither utility has made a final decision as to whether or not it will actually build these proposed new reactors.” But the statute does not require such a “final decision” and indeed contemplates that “[i]f the utility elects not to complete ... construction of the nuclear power plant, ... [it] shall be allowed to recover all prudent preconstruction and construction costs incurred!.]” § 366.93(6), Fla. Stat. (2010).
The PSC recognized “the potential pitfalls that might result from [the] ‘option creation’ approach,” and acknowledged SACE’s concern that it “could be interpreted as [the utility] not intending to actually construct” the plant. Final Order, 2011 WL 5904236, at *7. But the PSC rejected this interpretation and instead construed section 366.93 to mean that pre-construction activities creating an option to build can demonstrate a utility’s intent to build and, in turn, its eligibility to recover its associated costs under the statute. This construction is entitled to great deference and is not clearly erroneous. See Crist, 908 So.2d at 430.
Moreover, we find that competent, substantial evidence supports the PSC’s findings to the effect that the utility companies engaged in preconstruction activities creating an option to build the nuclear power plants at issue. See Final Order, 2011 WL 5904236, at *5-*7, *72-*76. SACE acknowledges as much and, as addressed above, we reject its argument that such evidence cannot demonstrate the utility companies’ intent to build the plants so as to be eligible to recover costs under section 366.93. SACE points to other conflicting evidence regarding the utility companies’ intent to build, but we “will not overturn an order of the PSC because we would have arrived at a different result had we made the initial decision and we will not re-weigh the evidence. Our task is to determine whether competent substantial evidence supports a PSC order.” Gulf Power Co. v. Fla. Pub. Serv. Comm’n, 453 So.2d 799, 803 (Fla.1984). Having determined so in the present case, we affirm on this issue.
III. CONCLUSION
SACE argues that section 366.93 “has had the dramatic effect of transferring all risk for proposed nuclear projects of Florida utilities away from utility shareholders and onto the utility’s ratepayers, giving the utilities a blank check to risk billions of dollars of the ratepayers’ money on speculative projects that would not be financed by the private sector.” We note, however, that the PSC in other uncontested portions of its final order addressed at great length the continued feasibility of the nuclear power plants at issue. See Final Order, 2011 WL 5904236, at *8-*15, *64-*69. We also note that SACE’s concern amounts to a policy consideration best addressed by the Legislature, not this Court.
Our role in this ease is to address SACE’s arguments that section 366.93 unconstitutionally delegates legislative authority to the PSC and, alternatively, that the PSC’s order is arbitrary and unsup *754 ported by competent, substantial evidence. For the reasons set forth above, we reject both arguments and affirm the PSC’s final order.
It is so ordered.
POLSTON, C.J., and PARIENTE, CANADY, LABARGA, and PERRY, JJ., concur.
LEWIS, J., concurs in result.
QUINCE, J., concurs in result only.

. According to its Internet website, "Southern Alliance for Clean Energy (SACE) is a nonprofit, nonpartisan organization that promotes responsible energy choices that solve global warming problems and ensure clean, safe and healthy communities throughout the Southeast.” SACE Frequently Asked Ques- . tions, http://www.cleanenergy.org/index.php?/ FAQ.html#.UMjjNeTBGSo (last visited Dec. 12, 2012).' SACE and several other entities were intervenors in the proceedings below.

. We note that these amounts include recovery costs not only for the subject preconstruction activities associated with the utility companies' new nuclear power plants but also for uprate activities at their existing nuclear plants. SACE does not contest the latter.

. Technically speaking, the Legislature in this case has not delegated its power to another branch, as the Public Service Commission "has been and shall continue to be an arm of the legislative branch of government," § 350.001, Fla. Stat. (2010). But "some of the functions given the [PSC] are executive in nature ... [and it] also performs quasi-judicial functions.” Chiles v. Pub. Serv. Comm’n Nominating Council, 573 So.2d 829, 832 (Fla. 1991). As its latter function is at issue here, separation of powers principles apply despite the fact that the PSC is a legislative agency. See Fla. Gas Transmission v. Pub. Serv. Comm’n, 635 So.2d 941, 944 (Fla.1994) (recognizing in the PSC context that "a legislative delegation of power to a legislative or executive agency permitting an agency to declare what the law is violates Florida's separation of powers doctrine").