# Third District Court of Appeal

## State of Florida

Opinion filed June 24, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0911
Lower Tribunal No. F16-21845B

_____

**Carlos Mojica,**
Appellant,

vs.

**State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Miguel M. de la O, Judge.

Carlos J. Martinez, Public Defender, and Shannon Hemmendinger, Assistant Public Defender, for appellant.

James Uthmeier, Attorney General, and Ivy R. Ginsberg and Katryna Alexis Santa Cruz, Assistant Attorneys General, for appellee.

Before FERNANDEZ, LOGUE and LINDSEY, JJ.

ON MOTION FOR REHEARING

LOGUE, J.

We deny the motion for rehearing, but withdraw our prior opinion filed on January 28, 2026, and issue this opinion in its stead.

In the proceeding below, Carlos Mojica was found guilty of first-degree felony murder for which he was sentenced to life in prison. In addition, he was found guilty of child abuse for which he was sentenced to ten years in prison. In this appeal, he does not challenge his conviction for first-degree murder, and he remains in prison serving his life sentence. Instead, he challenges only his conviction and sentence for child abuse.

Mojica was found guilty of child abuse under a statute that criminalizes "[a]n intentional act that could reasonably be expected to result in . . . mental injury to a child." § 827.03(1)(b)2., Fla. Stat. (2016). The statute contains a definition of "mental injury" that requires proof "supported by expert testimony." § 827.03(1)(d), Fla. Stat. (2016). Although the trial court properly gave the standard jury instruction that informed the jury of the statute's requirement of proof "supported by expert testimony," Fla. Std. Jury Instr. (Crim.) 16.3, the State did not present expert testimony. Nevertheless, the trial court denied several motions for acquittal. Because of the absence of expert testimony on the issue of mental injury, Mojica requests this Court to reverse his conviction for child abuse. Given the express language in the text of the statute requiring expert testimony and the absence of such testimony

2

in the record, we are constrained to reverse.

## Background

As mentioned above, Mojica was charged with the first-degree felony murder of an adult and the child abuse of a three-year-old child, C.T., who he and the child's mother, Liz Corcho, brought to the scene of the murder. Corcho was a co-defendant in the case and pled guilty to a reduced charge of second-degree murder in exchange for testifying against Mojica.

Corcho testified that she and Mojica followed the victim from a store to her home with the intent of robbing her. Initially, Mojica drove the pickup truck they were in with Corcho sitting in the passenger seat and C.T. positioned between them. When they reached the victim's neighborhood, however, Corcho and Mojica switched seats so that Mojica could rob the victim and Corcho could act as the getaway driver.

At the victim's driveway, Mojica jumped out of the pickup truck, leaving the passenger door open. Mojica attacked the victim; the victim began screaming; and the child began crying hysterically when the victim began to scream. Mojica jumped into the passenger seat with the victim's purse and told Corcho to take off. She accelerated even before Mojica could close the door. Corcho did not feel any bumps when she drove off. In the commotion, one of C.T.'s shoes was left at the scene. Other evidence established that

3

while the victim lay screaming on the ground, the pickup truck ran over her head. The victim died as a result.

As to the child abuse charge, the State's theory was that Mojica's action in taking a three-year-old child with him to a planned robbery where he attacked the screaming victim, ultimately leading to the victim's death under gruesome circumstances, qualified as an intentional act that could reasonably be expected to result in mental injury to the child.

The trial court gave the following standard jury instruction for the child abuse charge, which recognized the requirement that the State's proof of mental injury be supported by expert testimony.

> To prove the crime of Child Abuse, the State must prove the following two elements beyond a reasonable doubt:
>
> 1. Carlos Mojica knowingly or willfully abused C.T. by committing an intentional act that could reasonably be expected to result in . . . mental injury to C.T.
>
> 2. C.T. was under the age of 18 years.
>
> "Willfully" means intentionally and purposely.
>
> "Mental injury" means an injury to the intellectual or psychological capacity of a child as evidenced by a discernible and substantial impairment in the ability to function within the normal range of performance and behavior **as supported by expert testimony**.

Fla. Std. Jury Instr. 16.3 (Crim.) (emphasis added). The State, however,

4

failed to present any expert testimony supporting its claim that Mojica's intentional act could reasonably be expected to result in mental injury to C.T. During the trial, Mojica timely moved for a judgment of acquittal on the child abuse charge, which the trial court denied.

The jury found Mojica guilty of first-degree felony murder and child abuse as charged. The trial court adjudicated Mojica guilty as to both charges and thereafter sentenced him. As mentioned above, Mojica appeals only his conviction and sentence for child abuse.

### Analysis

Mojica contends the trial court erred by denying his motion for judgment of acquittal as to the child abuse charge because the State failed to support its claim of mental injury that could reasonably be expected to result from Mojica's intentional acts with expert testimony as required by the plain language of section 827.03. The State responds, however, by contending that section 827.03's definition of "mental injury" only applies to crimes where "mental injury" actually resulted, see § 827.03(1)(b)1., Fla. Stat. (2016), and not to crimes involving "mental injury" that could reasonably be expected to result from a defendant's intentional acts. See § 827.03(1)(b)2., Fla. Stat.

Because this case turns on statutory construction, we first review the

5

fundamental principles of statutory interpretation and then the text of the governing statute. Florida jurisprudence regarding statutory interpretation is grounded on the "supremacy-of-text principle," which holds that "[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." 940 Ocean Drive, LLC v. Sobe USA, LLC, 403 So. 3d 1048, 1055 (Fla. 3d DCA 2025) (quoting Ham v. Portfolio Recovery Assocs., LLC, 308 So. 3d 942, 946 (Fla. 2020) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 56 (2012))). There are countless reasons why courts must follow the statutory text, but the most fundamental one in the criminal context is simply that "[t]he power to prohibit and criminalize certain acts is within the province of the legislature, not the courts." Baker v. State, 636 So. 2d 1342, 1344 (Fla. 1994).

The principle of "supremacy-of-text" has particular force when it comes to statutory definitions of statutory terms. "Where the legislature has used particular words to define a term, the courts do not have the authority to redefine it." Baker, 636 So. 2d at 1343–44. This principle is in line with the simple common sense that when the Legislature takes the trouble to define a statutory term, the Legislature's definition applies to its uses of the defined term: "We are required to acknowledge and follow these explicitly defined

6

terms." Baxter v. State, 389 So. 3d 803, 810 (Fla. 5th DCA 2024); see also

Deloatch v. State, 360 So. 3d 1165, 1169 (Fla. 4th DCA 2023) ("When a

statute includes an explicit definition, [courts] must follow that definition . . .

." (quoting Stenberg v. Carhart, 530 U.S. 914, 942 (2000))).

Turning to the text of section 827.03, Florida Statutes (2016), the

statute at issue, the Legislature criminalized certain types of child abuse:

> (2) Offenses.--
>
> . . . .
>
> (c) A person who knowingly or willfully abuses a child without causing great bodily harm, permanent disability, or permanent disfigurement to the child commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

§ 827.03(2)(c), Fla. Stat. In creating the criminal offense of "child abuse," the

Legislature set forth three separate definitions of "child abuse," each

including "mental injury":

> (b) "Child abuse" means:
>
> 1. **Intentional infliction** of physical or **mental injury** upon a child;
>
> 2. An **intentional act that could reasonably be expected to result** in physical or **mental injury** to a child; or
>
> 3. **Active encouragement** of any person to commit an act that results or **could reasonably be expected** to result in physical or **mental injury** to a child.

7

§ 827.03(1)(b), Fla. Stat. (emphases added). Here, Mojica was convicted of "child abuse" as defined in section 827.03(1)(b)2.

In including "mental injury" as a basis for child abuse, the Legislature defined "mental injury," requiring that proof of "mental injury" be "supported by expert testimony":

> (d) "Mental injury" means injury to the intellectual or psychological capacity of a child as evidenced by a discernible and substantial impairment in the ability of the child to function within the normal range of performance and behavior **as supported by expert testimony**.

§ 827.03(1)(d), Fla. Stat. (emphasis added).

The Legislature went on to strictly limit the type of experts who could testify as to "mental injury":

> (3) Expert testimony.--
>
> (a) Except as provided in paragraph (b), a physician may not provide expert testimony in a criminal child abuse case unless the physician is a physician licensed under chapter 458 or chapter 459 or has obtained certification as an expert witness pursuant to s. 458.3175 or s. 459.0066.
>
> (b) A physician may not provide expert testimony in a criminal child abuse case regarding **mental injury** unless the physician is a physician licensed under chapter 458 or chapter 459 who has completed an accredited residency in psychiatry or has obtained certification as an expert witness pursuant to s. 458.3175 or s. 459.0066.

8

(c) A psychologist may not give expert testimony in a criminal child abuse case regarding **mental injury** unless the psychologist is licensed under chapter 490.

§ 827.03(3), Fla. Stat. (emphases added). Finally, the Legislature provided that these heighten "expert testimony requirements . . . apply only to criminal child abuse cases and not to family court or dependency court cases." § 827.03(3)(d), Fla. Stat.

When the provisions of the statute are read together, they reflect the Legislature's policy determination that the level of proof needed to establish child abuse punishable as a crime is substantially higher than the level of proof needed to prove child abuse in the civil context. As a court, we are not convened to correct or improve the Legislature's policy choice. S. All. for Clean Energy v. Graham, 113 So. 3d 742, 745 (Fla. 2013) ("[I]t is not this Court's function to substitute its judgment for that of the Legislature as to the wisdom or policy of a particular statute." (quoting State v. Rife, 789 So. 2d 288, 292 (Fla. 2001))). We are authorized only to apply it. As a review of these provisions indicate, the plain and ordinary meaning of the text specifies that the State's proof of the mental injury which the intentional act was reasonably expected to cause must be "supported by expert testimony." § 827.03(1)(d), Fla. Stat.

Nevertheless, as mentioned above, the State argues the Legislature

intended that section 827.03's definition of "mental injury" apply only to crimes where "mental injury" actually resulted, see § 827.03(1)(b)1., Fla. Stat., not to "mental injury" that could reasonably be expected to result from a defendant's intentional acts. See § 827.03(1)(b)2., Fla. Stat. Presumably, the State would interpret the statute to allow prosecutions in those circumstances even if the mental injury at issue could not be supported by expert testimony or if the mental injury could meet only the lower standard for mental injury that applies in civil cases.

The problem with the State's argument is that it is at odds with the text of the statute. In the first place, the Legislature, after defining the term "mental injury" to require that it be supported by expert testimony, used the term concerning both crimes. When the Legislature uses the same term in different parts of a statute, we must assume the Legislature intended the same meaning. If the Legislature intended a different meaning, it would use a different term than the one that it so carefully defined. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts § 25, at 170 (2012) ("A word or phrase is presumed to bear the same meaning throughout a text[.]").

To reach the State's interpretation, we would have to rewrite the statutory definition to require "mental injury" to be supported by expert

10

testimony in some criminal child abuse prosecutions but not others. "An interpretation that requires this level of rewriting is not persuasive or permissible." <u>Rosenberg v. U. S. Bank</u>, 360 So. 3d 795, 802 (Fla. 3d DCA 2023). <u>See, e.g.</u>, <u>Hayes v. State</u>, 750 So. 2d 1, 4 (Fla. 1999) ("[Courts] are not at liberty to add words to statutes that were not placed there by the Legislature.").

Secondly, the Legislature used the term "mental injury" seven times in the statute. In several sentences, the Legislature used the singular term "mental injury" when referring to actual mental injury <u>and</u> to mental injury "that could reasonably be expected to result." <u>See</u> § 827.03(1)(b)3., Fla. Stat. (including as one form of child abuse "[a]ctive encouragement of any person to commit an act **that results or could reasonably be expected to result** in physical or **mental injury** to a child") (emphases added); § 827.03(1)(e), Fla. Stat. ("Except as otherwise provided in this section, neglect of a child may be based on repeated conduct or on a single incident or omission **that results in, or could reasonably be expected to result in**, serious physical or **mental injury**, or a substantial risk of death, to a child.") (emphases added). To accept the State's interpretation, we would have to conclude the Legislature used the term "mental injury" to mean two different things in the same sentence—one requiring expert testimony and one not.

11

Thirdly, as noted above, the Legislature expressly stated that the heightened "expert testimony requirements" in section 827.03 "apply only to criminal child abuse cases and not to family court or dependency court cases." § 827.03(3)(d), Fla. Stat. In so stating, the Legislature did not exclude some types of criminal child abuse as the State requests us to do.

The State also asserts the interpretative doctrine of avoiding surplusage supports the State's interpretation. Again, with all respect, we fail to see how that doctrine applies here. The two crimes remain separate as the Legislature wrote them: one crime involves "mental injury" that actually resulted and the other "mental injury" "that could reasonably be expected to result." The requirement that either theory be supported by expert testimony does not collapse the two crimes as the State suggests or make any language surplusage.

To the extent the State has concerns with the wisdom of the law under review, the State must knock on the doors of the Florida House and Senate, not the door of the courthouse:

> If a Legislative enactment violates no constitutional provision or principle it must be deemed its own sufficient and conclusive evidence of the justice, propriety and policy of its passage. Courts have then no power to set it aside or evade its operation by forced and unreasonable construction. If it has been passed improvidently the responsibility is with the Legislature and not the courts.

12

Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 454 (Fla. 1992) (quoting Van Pelt v. Hilliard, 78 So. 693, 694-95 (Fla. 1918)).

In sum, although the facts of the charged crime are disturbing, we cannot let those facts distract us from the narrow legal issue of statutory interpretation before us. In our view, this is a straightforward matter controlled by the "supremacy-of-text" principle. Because the text required the State to support its proof of "mental injury" with "expert testimony" and the State failed to do so, we are constrained to reverse Mojica's conviction and sentence for child abuse.

Reversed.

FERNANDEZ, J., concurs.

LINDSEY, J., dissenting.

I respectfully dissent. The Majority denies rehearing, withdraws its prior opinion, and issues a new opinion instead.

This time, the Majority concludes that "this is a straightforward matter controlled by the 'supremacy-of-the–text' principle." I take no issue with this principle. Indeed, I agree with applying it here. And, for the reasons elaborated in my prior dissent, and set forth below, the "supremacy–of–the–text principle" mandates affirmance of Mojica's conviction and sentence for felony child abuse.

Section 827.03, Florida Statutes (2016), criminalizes child abuse.[1] Subsection (1)(b) provides three independent theories of prosecution for "child abuse":

1. Intentional infliction of physical or mental injury upon a child;

2. **An intentional act that could reasonably be expected to result in** physical or **mental injury** to a child; or

---

[1] "A person who knowingly or willfully abuses a child without causing great bodily harm, permanent disability, or permanent disfigurement to the child commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084." § 827.03(2)(c), Fla. Stat. (2016).

3. Active encouragement of any person to commit an act that results or could reasonably be expected to result in physical or mental injury to a child.

§ 827.03(1)(b), Fla. Stat. (2016) (emphasis supplied).

Subsection (1)(d), defines "mental injury" as follows:

(d) "Mental injury" means injury to the intellectual or psychological capacity of a child as evidenced by a discernible and substantial impairment in the ability of the child to function within the normal range of performance and behavior **as supported by expert testimony**.

§ 827.03(1)(d), Fla. Stat. (2016).[2]

The Majority holds the "mental injury" definition applies to subsection (1)(b)2, such that the State must prove the precise mental injury—through expert testimony—that the intentional act could reasonably be expected to cause. Applying this construction of section 827.03, the Majority reverses Mojica's conviction under section 827.03(1)(b)2 for insufficient evidence because it was not supported by such expert testimony. I would not.

The interplay between subsection (1)(b)'s three independent bases of child abuse demonstrates that subsection (1)(d)'s mental injury definition,

---

[2] The Florida Legislature amended section 827.03 to add the definition of "mental injury." Prior to amendment, mental injury was undefined in section 827.03. See Ch. 2012-155, § 9, Laws of Fla. ("[A]mending s. 827.03, F.S.; defining the term 'mental injury' with respect to the offenses of abuse, aggravated abuse, and neglect of a child.").

15

and its requirement of expert testimony, applies **only** to the subsection where proof of actual mental injury is a required element of the offense—*i.e.*, subsection (1)(b)1, and (1)(b)3.  Our most fundamental canons of statutory construction compel this conclusion.

Under the surplusage canon, "courts should avoid readings that would render part of a statute meaningless."  Unruh v. State, 669 So. 2d 242, 245 (Fla. 1996) (quotation omitted); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012) (citation omitted) ("[E]very provision is to be given effect" and "[n]one should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence.").  This canon works in tandem with the harmonious-reading canon, for the basic tenet of statutory interpretation that a "statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts."  D.M.T. v. T.M.H., 129 So. 3d 320, 332 (Fla. 2013) (quotation omitted); see also Scalia & Garner, supra, at 180 ("[H]armony among provisions is more categorical than most other canons of construction because it is invariably true that intelligent drafters do not contradict themselves[.]").

Consider, first, the plain language and structure of section 827.03(1).  Subsection (1)(d) defines actual "mental injury," *i.e.*, "injury to the intellectual

16

or psychological capacity of a child . . . ." § 827.03(1)(d). This subsection then proceeds to set forth how the State proves the injury— "discernible and substantial impairment in the ability of the child to function within the normal range of performance and behavior as supported by expert testimony." Id.

Subsection (1)(b)2, though, does not require an act that results in mental injury nor proof of actual mental injury. Indeed, the Majority concedes this point. Rather, subsection (1)(b)2 only requires proof of an "**intentional act** that could reasonably be expected to result in mental injury." § 827.03(1)(b)2 (emphasis added). It follows that if proof of actual mental injury is not required under this subsection, the State need not present expert testimony of the proof of that injury. Accordingly, the definition of "mental injury" in subsection (1)(d), which necessarily calls for proof of mental injury, does not apply here.

Nonetheless, the Majority argues that because subsection (1)(b)2 uses the term "mental injury," the State must present expert testimony of the precise "mental injury" that the intentional act was reasonably expected to cause. The issue with this interpretation is that subsection (1)(d)'s mental injury definition is founded upon proof of a "discernible and substantial

17

impairment"; not proof of what "could reasonably be expected."[3]  As a result,

applying the definition of "mental injury" to subsection (1)(b)2 in this manner

tacks on an extra element to subsection (1)(b)2—expert proof of defined

discernible and substantial impairments.

---

[3] The plain language of the definition requires this strict construction.  The phrase "as evidenced by" operates as a modifier between the claimed injury— "injury to the intellectual or psychological capacity of a child" —and its proof— "a discernible and substantial impairment[.]"  See § 827.03(1)(d); accord State v. Lauriston, 295 So. 3d 281, 284 (Fla. 4th DCA 2020) ("Under the nearest-reasonable-referent doctrine, 'whether coming before or after what is modified, modifiers (adjectives, adverbs, prepositional phrases, restrictive clauses) should be read as modifying the nearest noun, verb, or other sentence element to which they can reasonably be said to pertain.'").  The definition further modifies proof of the injury—i.e., discernible and substantial impairment—with the phrase "as supported by expert testimony."  Finally, the word "means," signals an exhaustive definition under the interpretative-direction canon.  In other words, the clear import of subsection (1)(d)'s "mental injury" definitional section is that this is its only meaning when it is an element of an offense in section 827.03.  See Scalia & Garner, supra, at 226 ("When . . . a definitional section says that a word 'means' something, the clear import is that this is its **only** meaning.").  Applying these canons, the definition's most natural reading is that "as evidenced by" and "as supported by" work together as stacked modifiers of their nearest sentence elements, and the word "means" limits the manner the defined term can be satisfied when it is an element of an offense.  That is, a precise mental injury must be evidenced by discernible and substantial impairment, and that impairment must be supported by expert testimony.  This eliminates the possibility that mental injury, as an element of an offense, can be satisfied by expert testimony of the mere reasonable probability of an unspecified mental injury without delineating the impairments that generally evidence that injury.

Consequently, under both subsection (1)(b)1 and (1)(b)2, the State would effectively have to litigate, through experts, proof of defined discernible and substantial impairments and how such impairments evidence a precise mental injury. This reading collapses the State's evidentiary burden in subsections (1)(b)1 and (1)(b)2 into mere mirrors of each other—as it relates to mental injury—and ignores the textual structure of these subsections as separate prosecutorial theories of child abuse.

In other words, the Majority's construction imports the mental injury definition into subsection (1)(b)2 as a required element, giving that subsection a meaning with an effect already achieved by subsection (1)(b)1. It deprives subsection (1)(b)2 of its independent effect—a separate prosecutorial theory obviating the State's need to present expert proof of discernible and substantial impairments and how such impairments evidence a mental injury. It renders subsection (1)(b)2 meaningless within the structure of section 827.03(1). Cf. Patino v. State, 390 So. 3d 164, 168 (Fla. 3d DCA 2024) (quotation omitted) ("[C]ourts should avoid readings that would render part of a statute meaningless."). This absurd result is precisely what the surplusage canon disfavors.[4]

_____

[4] "If a provision is susceptible of (1) a meaning that gives it an effect already achieved by another provision, or that deprives another provision of all independent effect, and (2) another meaning that leaves both provisions with

19

Thus, we must read subsections (1)(b)1 and (1)(b)2 in a manner that leaves both with some independent operation. In this vein, the definition of mental injury—and its requirement of expert testimony on impairments evidencing a particular mental injury—should only apply when actual mental injury is a required element of the offense. When actual mental injury is not a required element of an offense—as when establishing the reasonable probability of mental injury under subsection (1)(b)2—the definition should not apply.

Under this plain reading of the statute, when proceeding under section 827.03(1)(b)1, the State is required to provide proof—through qualified expert testimony—of an actual mental injury evidenced by the existence of discernible and substantial impairments in the child. By contrast, when proceeding under section 827.03(1)(b)2, actual mental injury is not a required element of the offense. Thus, it follows, expert testimony is not required to prove the precise "mental injury" that the intentional act could reasonably be expected to cause.

---

some independent operation, **the latter should be preferred**." Commodore, Inc. v. Certain Underwriters at Lloyd's London, 342 So. 3d 697, 703 (Fla. 3d DCA 2022) (emphasis supplied) (quoting Scalia & Garner, supra, at 176).

Simply put, section 827.03(1)(b)2 does not require proof of actual mental injury. Therefore, the State does not have to present expert testimony of mental injury.

Applying this reading of subsection (1)(b)2, Mojica's conviction is supported by competent, substantial evidence.[5] Mojica was convicted under section 827.03(1)(b)2. As the Majority lays out in gruesome painstaking detail, the State presented evidence establishing that Mojica took C.T. with him to a planned robbery where he attacked a screaming victim, ultimately leading to the victim's murder under gruesome circumstances in C.T.'s presence. This is more than enough competent, substantial evidence to prove that Mojica's intentional acts "could reasonably be expected to result in mental injury" to C.T. and convict Mojica under section 827.03(1)(b)2.

Accordingly, I respectfully dissent and would affirm Mojica's conviction and sentence for felony child abuse.

---

[5] "When the defendant in a criminal appeal challenges the sufficiency of the State's evidence, the appellate court conducts a de novo review of the trial record to ensure that the guilty verdict is supported by competent, substantial evidence regarding each element of the charged crime." Garcia v. State, 373 So. 3d 1213, 1222 (Fla. 3d DCA 2023).

21